UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

EARLINE MCBRIDE,

    Plaintiff,

vs.

CARNIVAL CORPORATION,
a foreign corporation,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

   Plaintiff, EARLINE MCBRIDE, by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files her Complaint against Defendant, CARNIVAL CORPORATION, a foreign corporation, and as grounds therefore states as follows:

## GENERAL ALLEGATIONS

   1. That is an action for negligence arising out of an injury occurring on the cruise ship M/V CARNIVAL ECSTASY which was owned and operated by Defendant CARNIVAL CORPORATION (hereinafter "CARNIVAL").

   2. This Court has original jurisdiction over this matter as set forth in 28 U.S.C. Section 1333 as this lawsuit arises out of a maritime and admiralty claim and is controlled by the general maritime law of the United States. Further, Plaintiff is seeking damages in excess of seventy five thousand dollars ($75,000.00), exclusive of interest, costs and attorney's fees. This Court therefore has jurisdiction based on diversity of citizenship 28 USC § 1332.

3.   Venue in this Court is proper pursuant to the passenger ticket contract issued by Defendant CARNIVAL containing a forum selection clause which requires all disputes and matters arising out of and in connection with the subject cruise be litigated in the United States District Court for the Southern District of Florida, Miami Division.

4.   This Court has personal jurisdiction over CARNIVAL because Defendant has, at all times relevant to this cause of action, through its agents, officers, distributors, and/or representatives:

    a.   Operated, conducted, engaged in, and/or carried on a business venture in Florida and has an office in Florida;

    b.   Used, possessed, or held a mortgage or other lien on real property within Florida; and/or

    c.   Engaged in substantial and not isolated activities within Florida by maintaining stores, offices, employees, distributors, and/or registered agents in Florida, selling products in Florida, advertising products in Florida, or entering into contracts in Florida.

    d.   Additionally, pursuant to its travel document and passenger ticket contract, Defendant has submitted itself to the jurisdiction of this Court.

5.   All times material hereto the Defendant, CARNIVAL, was and is a foreign corporation, with its principal place of business in Miami-Dade County, Florida, and was and is a business entity and common carrier engaged in the shipping and passenger cruise business.

6.   At all times hereinafter mentioned, Plaintiff, EARLINE MCBRIDE, was a citizen of the United States and was and is a resident of Lancaster County, State of Pennsylvania, and was and is *sui juris*.

7.   At all times material hereto, Defendant owned, operated, managed and/or controlled the M/V CARNIVAL ECSTASY.

8.   At all material times hereto, Plaintiff was a fare paying passenger and business invitee aboard the M/V CARNIVAL ECSTASY for the purpose of enjoying a vacation cruise.

9.   At all material times hereto, Defendant owed a nondelegable duty to Plaintiff to provide safe ingress and egress to the subject vessel, including the duty to use reasonable care in disembarking Plaintiff from the vessel CARNIVAL ECSTASY vis wheelchair which was manned by a CARNIVAL crewmember.

10. Alternatively, Defendant CARNIVAL and/or its employees, at all material times, engaged in certain affirmative undertakings, as hereinafter alleged; and in doing so acquired a duty to exercise reasonable care in those undertakings.

11. On or about November 23, 2015 Plaintiff, EARLINE MCBRIDE, was lawfully and properly a fare-paying passenger and business invitee on board the vessel CARNIVAL ECSTASY.

12. At all material times, the CARNIVAL ECSTASY had a gangway leading from the subject vessel, included a ramp for the embarkation and disembarkation of disabled guests.

13. On said date, Plaintiff, EARLINE MCBRIDE, who is disabled, was disembarking said vessel via wheelchair. She was being assisted by a member of the M/V CARNIVAL ECSTASY's crew, who was pushing her wheelchair.

14. As she was heading down a wheelchair ramp from the subject vessel to the shore, the wheelchair struck a defect, or change of angle, that caused the CARNIVAL crewmember to lose control of Plaintiff's wheelchair, violently throwing Plaintiff to the ground and causing her severe injuries.

15. The accident occurred due to the unsafe design and condition of the subject gangway.

16. The accident also occurred due to the the CARNIVAL crewmember's negligent failure of to exercise reasonable care under the circumstances which is directly imputable to CARNIVAL.

17. The Defendant knew or should have known that the risk of an accident involving disembarkation of disabled passengers via wheelchair is heightened because of the general physics of descending a gangway, and that gangways must be free of defects, and that crewmembers must be properly trained in the safe handling of disabled guests, who are entrusted to their care.

18. The subject gangway, upon information and belief and at all relevant times, is both a designated pedestrian pathway for accessibility purposes and a designated escape route for purposes of the Safety of Life at Sea (SOLAS) Treaty.

19. The subject gangway contained a change in angle and/or gap which caused the gangway to be unreasonably unsafe.

20. Further, Defendant's crewmembers negligently assisted Plaintiff in her disembarkation from the vessel. Said crewmember was either negligently trained, or negligently failed to follow his training, either of which is directly imputable to CARNIVAL as said crewmember was acting in the course and scope of his employment when he was disembarking Plaintiff from the subject vessel.

21. In the present case, the subject gangway on the M/V CARNIVAL ECSTASY at all relevant times, was unreasonably unsafe as follows:

    a.  The subject gangway was too steep; and/or

b. The subject gangway contained a defect, either a gap or change of elevation, that caused Defendant's employee/crewmember to lose control of said wheelchair, causing Plaintiff severe injury.

22. In the present case, the CARNIVAL's crewmember was negligent in disembarking Plaintiff as follows:

a. The crewmember knew, or should have known, of the subject defect in the subject gangway and should have taken precautions to avoid losing control of Plaintiff's wheelchair while she was in said wheelchair.

b. The crewmember failed to inspect the subject gangway for defects, changes of angle or gaps prior to disembarking a disabled passenger via wheelchair;

c. The crewmember negligently lost control of the subject wheelchair;

d. The crewmember negligently failed to request assistance in disembarking Plaintiff;

e. The crewmember negligently failed to warn Plaintiff of the dangers of being disembarked via wheelchair, considering that there were multiple other similar incidents.

23. All pre-conditions to this action have been met or waived.

## COUNT I - NEGLIGENCE

24. Plaintiff repeats and realleges paragraphs 1 through 23 as if set forth herein *in extenso* and further alleges:

25. On or about November 23, 2015, and continuing thereafter, Defendant breached the duty owed to Plaintiff by committing one or more of the following acts and/or was negligent in

the operation, maintenance or control of the M/V CARNIVAL ECSTASY and its appurtenances, including its gangway, in the following respects:

a. The Defendant failed to exercise reasonable care for the safety of its passengers, including Plaintiff, by creating a dangerous condition in and around the vessel's gangway;

b. The Defendant failed to provide a reasonably safe means of ingress and egress from the subject vessel for passengers, reasonably designed for the safety of its passengers;

c. The Defendant failed to properly maintain the subject gangway for use by passengers, including Plaintiff;

d. The Defendant failed to properly inspect the subject gangway prior to the incident in question;

e. The Defendant failed to properly test, clean, and/or repair the subject gangway prior to the incident in question;

f. The Defendant failed to warn passengers, including Plaintiff, whom Defendant knew or should have known would be using the subject gangway of the dangerous condition which existed when passengers used those areas of the ship;

g. The Defendant failed to properly train its employees in the use of the subject gangway for the disembarkation of its disabled passengers;

h. The Defendant allowed a dangerous condition to exist notwithstanding prior incidents involving similar accidents aboard the M/V CARNIVAL ECSTASY and other vessels in its fleet of cruise ships;

i.  The Defendant failed to adequately investigate prior and subsequent incidents involving similar circumstances on the M/V CARNIVAL ECSTASY and other vessels in its fleet of cruise ships;

j.  The Defendant failed to post adequate warnings to passengers of the dangerous and unsafe condition in and about the subject gangway of the M/V CARNIVAL ECSTASY and other vessels in its fleet of cruise ships

k.  The Defendant failed to provide a sufficient amount of crewmembers to complete the subject disembarkation process;

l.  The Defendant failed to provide an appropriately designed gangway;

m.  The Defendant's employees, operating in the course and scope of their employment, failed to safely disembark Plaintiff;

n.  Other acts of fault and negligence which will be proven at the trial of this matter.

26.  Said unreasonably dangerous conditions existed for a sufficient amount of time that Defendant knew or should have known of said dangerous conditions and should have taken steps to correct the unsafe conditions in a timely manner. Defendant was on actual or constructive notice of the presence of said conditions.

27.  Defendant was also on constructive notice of the unsafe condition in that it negligently selected an unsafe design for the area in question, including a design with improper angle and gangway connections, thereby causing a hazard on a gangway where disabled passengers and business invitees were expected to traverse. Said negligent selection and design make Defendant liable for actually creating the unreasonably dangerous condition which caused Plaintiff's injuries.

28.  CARNIVAL, at all material times, also had a non-delegable duty as a ship operator to comply with the International Safety Management (ISM) Code, which requires vessel operators to establish safeguards against identified risks aboard vessels, such as disembarkation hazards, including an unreasonably dangerous subject gangway.

29. The aforesaid hazards, risks, and conditions, upon information and belief and at all material times, violated the aforementioned codes, standards, guidelines, and recommendations of the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, the American Society for Testing and Materials (ASTM), National Fire Protection Association (NFPA), and the SOLAS Treaty.

30. Defendant CARNIVAL, at all relevant times, knew or should have known of the aforementioned risks, hazards, and dangerous conditions in the subject gangway, based upon the actual knowledge and activities of its employees, based upon general scientific, engineering, and architectural knowledge then-available to the Defendant, based upon knowledge of its own passengers' prior mishaps at same or similar gangways exiting the subject vessel and/or elsewhere in Defendant's fleet of vessels, and based upon the Defendant's actual knowledge of the overall configuration and condition of the subject gangway at all relevant times. Defendant failed to take reasonable steps to correct the hazards and failed to warn Plaintiff of the hazards.

31. Defendant knew or in the exercise of reasonable care should have known that its passengers and business invitees, including the Plaintiff, would encounter the unsafe subject gangway in the normal course of their usage of the vessel's facilities. Defendant therefore had a duty to warn of any dangerous conditions said invitees would encounter during said normal usage. *Samuelov v. CARNIVAL Cruise Lines, Inc.,* 870 So.2d 853, 856 (Fla.App. 3 Dist. 2003) (property

owner has duty to warn of dangerous conditions which the owner has reason to believe that its business invitees will encounter regardless of the open and obvious nature of the condition).

32. The Defendant, before and after the incident complained of in the present case, has been a frequent target of legal claims arising from just such gangway risk factors, and failures to remediate them.

33. The Defendant, at all relevant times, negligently failed to research, and/or to inspect for, and/or to assess and/or to take reasonable and feasible steps to correct, and/or to mitigate, and/or to warn the plaintiff concerning the aforementioned hazards, risks, dangerous conditions, or to undertake repairs that were feasible, in the subject gangway and in substantially similar gangways throughout its fleet.

34. Upon information and belief (and based on the unreasonably dangerous condition of the subject gangway), Plaintiff states that prior to the incident involving the Plaintiff, several passengers had been injured, and/or experienced "near misses", on the same or similar gangway, or on similar gangways throughout CARNIVAL'S entire fleet of vessels, and Defendant and/or its crew members, and/or its personnel were well aware of this historical information.

35. CARNIVAL, at all material times, breached its aforementioned non-delegable duties by failing to inspect or maintain the subject gangway, and/or by selecting a gangway that was unreasonably dangerous, which constituted an unreasonable risk of harm to its passengers, including the Plaintiff.

36. Defendant's negligence, as described above, caused the injuries Plaintiff complains of in this lawsuit.

37. As a result of the Defendant's negligence, the Plaintiff was injured in and about his body and extremities, suffered physical, emotional and mental pain, disfigurement, mental anguish, significant and permanent scarring, loss of the capacity of the enjoyment of life, incurred expenses of hospitalization, medical and nursing care and treatment, enhanced medical insurance costs, loss of earnings, loss of the ability to earn money, and/or aggravation of a previously existing condition. The injuries are either permanent or continuing in nature and the Plaintiff will suffer further losses and impairments in the future.

38. Defendant is at fault for causing Plaintiff's injuries and is liable to him for the above described damages which are continuing and/or permanent in nature.

39. Plaintiff demands trial by jury.

WHEREFORE, Plaintiff, EARLINE MCBRIDE, alleges negligence of Defendant, CARNIVAL CORPORATION, a foreign corporation, and prays that judgment be entered in Plaintiff's favor and against Defendant, for damages, costs, interest, pre-judgment interest and for all such other relief to which Plaintiff may be entitled by virtue of these proceedings, including trial by jury.

Dated this __23rd__ day of November, 2016.

Respectfully submitted,

BILLERA LAW
2201 N.W. Corporate Blvd., Suite 201
Boca Raton, FL 33431
Telephone: 561-218-4639
Fax: 561-826-7847
By: __s/John Billera_____
JOHN F. BILLERA, ESQ.
Florida Bar No.: 869041

THE MADALON LAW FIRM
100 North Federal Hwy.,
Suite CU-5, 4th Floor
Fort Lauderdale, FL  33301
JOSEPH MADALON, ESQ.
Telephone: (954) 923-0072
Facsimile: (954) 923-0074
Attorneys for Plaintiff
pleadings@madalonlaw.com